UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JTH TAX, INC. d/b/a LIBERTY TAX
SERVICE,

                Plaintiff,                    Case No. 19-cv-11607

v.

                                   Paul D. Borman
CLAUDIA MAGNOTTE, PAUL       United States District Judge
MAGNOTTE, and RELIABLE
INCOME TAX, LLC,

                Defendants.

_____/

ORDER PARTIALLY GRANTING PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
(ECF NO. 22.)

## I.     INTRODUCTION

Before the Court is Plaintiff JTH Tax, Inc. d/b/a Liberty Tax Service's

(Liberty) Motion for Temporary Restraining Order and Preliminary Injunctive

Relief. (ECF No. 22.) In it, Liberty requests a temporary restraining order and

preliminary injunction enforcing the post-termination obligations contained in its

Franchise Agreements with former franchisee Defendant Reliable Income Tax,

LLC (Reliable), owned by Defendants Claudia and Paul Magnotte (the Magnottes)

and non-party Lubove Cunningham. (ECF No. 22, Motion, PgID 383, 388.)

Liberty filed its Motion on December 12, 2019. No Defendant filed a response, and

the time for so doing has expired. E.D. Mich. LR 7.1(e)(1)(B). The Court finds that

the facts and legal arguments are adequately presented in the papers and brief, and will therefore resolve the motion without oral argument. E.D. Mich. LR 7.1(f)(2). For the reasons below, the Court grants the motion insofar as it seeks a preliminary injunction against the Magnottes and denies the remainder of the motion.

The Court has no power to grant relief against Reliable because, though a summons was issued for Defendant Reliable (ECF No. 8), Plaintiff has not filed any proof that Reliable was properly served, as required by Federal Rule of Civil Procedure 4(l)(1). Further, Reliable has not attempted to defend itself. For instance, even though, as a corporate entity, it must be represented by counsel in federal court, no attorney has filed an appearance on its behalf. *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969) ("[A] corporation cannot appear otherwise than through an attorney.") This failure to defend could be the result of lack of proper service. If Reliable was properly served, Liberty is free to seek relief against it through the clearly established "sequence of steps required of one seeking judgment by default." *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844 (6th Cir. 1983). Until then, the Court cannot grant relief against Reliable, so, to the extent the instant motion seeks injunctive relief against Reliable, it is denied.

## II.     FACTS

On December 13, 2013, Reliable, an LLC owned by the Magnottes and Lubove Cunningham, entered its first Franchise Agreement with Liberty. (ECF No. 22-4, Exhibit C, PgID 487–513.) The Magnottes and Ms. Cunningham agreed, on behalf of Reliable, to follow Liberty's instructions and pay it royalties in exchange for the exclusive right to use Liberty's trademarks, confidential information, software, and other proprietary information within the territory designated MI304—a portion of Warren, Michigan. (*See id.*) On December 7, 2016, the Magnottes and Ms. Cunningham signed two more Franchise Agreements on behalf of Reliable, this time for territories MI061, also in Warren, and MI112, in Clinton Township. (ECF Nos. 22-2 & 22-3, Exhibits B & C, PgID 425–85.)

Each of the Franchise Agreements had the following relevant terms: (1) a guaranty that the individuals signing on behalf of an entity as the franchisee agree "jointly and severally to perform all the obligations in and relating to this Agreement;"[1] (2) a choice-of-law provision stating that "Virginia law governs all claims that in any way relate to or arise out of this Agreement;" (3) a two-year post-termination covenant not to compete within a 25-mile radius around the territory; (4) a two-year post-termination covenant not to solicit any person or

---

[1] There is some stylistic variation between this provision in the 2013 Franchise Agreement and the 2016 Franchise Agreements. (*Compare* ECF Nos. 22-2 & 22-3, Exhibits A & B, PgID 450, 481 *with* ECF No. 22-4, Exhibit C, PgID 507.)

entity served by the Liberty franchise within a 25-mile radius around the territory for the purpose of offering tax services; and (5) post-termination obligations that include (a) selling back to Liberty equipment, signs, trade-fixtures, and furnishings used in the franchise, (b) ceasing to identify or holding out as a Liberty franchisee or former franchisee or using Liberty Marks in any way, (c) transferring to Liberty all phone numbers, listings, and advertisements used for the franchise, (d) delivering to Liberty "any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers," (e) delivering to Liberty "any originals and all copies, including electronic copies and media, containing customer tax returns, files, and records," and (f) returning Liberty's Operations Manual and any updates to it. (ECF Nos. 22-2, 22-3, & 22-4, Exhibits A, B, & C, PgID 441–42, 447, 450, 472–73, 478, 481, 499–501, 505, 507.)

On October 4, 2017 and January 9, 2018, Liberty sent two Notices to Cure Default to Reliable, the first based on its failure to "pass IRS EFIN suitability" and the second based on a monies-past-due balance of $218,027.84. (ECF Nos. 22-6 & 22-7, Exhibits E &F, PgID 522–23, 525.) On January 16, 2018 Liberty terminated all three Franchise Agreements. (ECF No. 22-8, Exhibit G, PgID 527–28.) The letter notifying the Magnottes and Ms. Cunningham of the termination also reminded them of their post-termination obligations. (*Id.*)

Despite the post-termination obligations, including the covenants not to compete or solicit, in January of 2019 Ms. Magnotte launched a Facebook page for "Phoenix Tax." (ECF No. 22-9, Exhibit 22-9, PgID 530–39.) On the page, Phoenix Tax identifies itself as a "Tax Preparation Service" and lists its principal place of business as 26815 Kaiser, Roseville MI. (*Id.* at PgID 530.) That address is the registered office of Reliable. (ECF No. 22-5, Exhibit D, PgID 520.) It is also within 25 miles of all three subject-territories of the Franchise Agreements. (*See* ECF Nos. 22-2, 22-3, & 22-4, Exhibits A, B, & C, PgID 453, 484, 509.) After the launch of the Facebook page, the Magnottes, under the name Phoenix Tax, sent letters to former Liberty customers saying, "[w]e've done your taxes in the Past and we would really love to do you [sic] taxes this year." (ECF No. 22-11, Exhibit J, PgID 545–46.) The letters also contained information on how to find Phoenix Tax on Facebook. (*Id.* at PgID 546.)

The Magnottes did not perform several other post-termination obligations. As of December 10, 2019, the Magnottes have not returned client files containing customer lists, past tax returns, files, and other customer information, nor have they returned Liberty's confidential Operations Manual. (ECF No. 22, Declaration of Anthony Cali, PgID 420, ¶¶ 22–23.) Mr. Magnotte has not, as of that same date, updated his LinkedIn profile to reflect that his is no longer a Liberty Franchisee—

he still lists himself as "Owner at Liberty Tax Service." (*Id.* at PgID 419, ¶ 18; ECF No 22-10, Exhibit I, PgID 541.)

Liberty's Regional Director Anthony Cali states that the Magnottes' actions have caused Liberty to suffer, and continue to cause Liberty to suffer "the loss of customer goodwill and loyalty; loss of business opportunities and relationships to provide tax preparation services and related services; loss of customers; loss of profits; loss of franchisee stability, loss of ability to sell other franchise; loss of competitive advantage in Warren and Roseville, Michigan and the MI061, MI112, and MI304 Territories; attorneys' fees; and cost of this action." (ECF No. 22, Declaration of Anthony Cali, PgID 421.)

## III. STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). Plaintiff bears the burden of demonstrating entitlement to preliminary injunctive relief. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Such relief will only be granted where "the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

When considering a motion for injunctive relief, the Court must balance the following factors: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief, (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and (4) whether the public interest would be served by granting the preliminary injunctive relief. *Id.* "These factors are not prerequisites, but are factors that are to be balanced against each other." *Id.* "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

"The proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary*, 228 F.3d at 739. Plaintiff must do more than just "create a jury issue," and must persuade the court that it has a likelihood of succeeding on the merits of its claims. *Id.* Plaintiff must demonstrate that it is *likely* to suffer irreparable harm in the absence of an injunction. *See Winter*, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.") (emphasis in original) (internal citations omitted). "The 'key word' in determining the extent of an injury sufficient to support the award of injunctive relief is

'irreparable.' Mere injuries, however substantial, are not enough. Rather, 'the harm alleged must be both certain and immediate, rather than speculative or theoretical.' " *Hudson v. Caruso*, 748 F. Supp. 2d 721, 730 (W.D. Mich. 2010) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)).

## IV.    ANALYSIS

Plaintiff Liberty has met its burden of showing entitlement to a preliminary injunction because all four factors lean in its favor. *See Overstreet*, 305 F.3d at 573 (stating the factors). First, Liberty is very likely to succeed on the merits on the claim it brings against the Magnottes—breach of contract. (*See* ECF No. 16, Second Amended Complaint, PgID 233.)

The first step in the merits analysis is determining which state's law to apply. "A federal court sitting in diversity must apply the choice-of-law rules of the forum state." *Stone Surgical, LLC v. Stryker Corporation*, 858 F.3d 383, 389 (6th Cir. 2017.) Michigan has adopted the approach of §§ 187 and 188 of the Restatement (Second) of Conflict of Laws for choice-of-law clauses in contracts. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 124 (1995). Under this approach, the parties' choice of law will be applied if the issue is one that can be resolved by reference to an express contractual provision unless the chosen state has no substantial relationship to the parties or transaction, or the chosen state's

law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Id.* at 125 (quoting Restatement (Second) of Conflict of Laws § 187(2)(b) (Am. Law. Inst. 1988)). Michigan favors respecting the parties' choice of law. *Id.* at 126 (criticizing the lower court for giving "insufficient weight to the effective choice of law made by the contracting parties.")

Here, the parties selected Virginia law. (*See* ECF Nos. 22-2, 22-3, & 22-4, Exhibits A, B, & C, PgID 447, 478, 505.) The issue before the Court is expressly addressed by provisions in the contracts at issue. So, Virginia law applies unless Virginia has no substantial relationship with the parties or transaction or Virginia's law is contrary to a fundamental policy of Michigan law, which may have a greater interest than Virginia because Michigan is the place of performance. *See Chrysler Corp.*, 448 Mich. at 124. Liberty has a substantial relationship with Virginia because its principal place of business is in Virginia Beach, Virginia. (ECF No. 16, Second Amended Complaint, PgID 216, ¶ 3.) The outcome of this straightforward breach of contract claim would be the same under either Virginia or Michigan law.[2] Therefore, the parties' choice of law prevails and Virginia law governs.

---

[2] The elements for breach of contract in Michigan are (1) a valid contract, (2) breach of the contract, and (3) damages from the breach. *Bank of America, N.A. v. First Am. Title Co.*, 499 Mich. 74, 101 (2016). The elements are the same in Virginia. *See Filak v. George*, 267 Va. 612, 619 (2004).

Under Virginia law, the elements of breach of contract are (1) a legally enforceable obligation, (2) defendant's violation of the obligation, and (3) damage to the plaintiff as a result of the violation. *Filak v. George*, 267 Va. 612, 619 (2004). Here, the Magnottes signed three valid contracts with Liberty. (ECF Nos. 22-2, 22-3, & 22-4, Exhibits A, B, & C, PgID 452, 483, 508.) In the contracts they agreed to jointly and severally perform all the obligations in the agreement. (*See id.* at PgID 450, 481, 507.) Under these contracts, they had obligations to (a) return customer lists and files, the Operations Manual, and other confidential information, (b) stop holding themselves out as Liberty franchisees, and (c) avoid competing with Liberty or soliciting Liberty customers for two years after the termination of their Franchise Agreement. (*See id.* at PgID 441–42, 472–73, 499–501.) The Magnottes did not perform these obligations, violating the legally enforceable requirements of the Franchise Agreements. Their violations have caused damages to Liberty of lost customer good will, lost profits, loss of competitive advantage, and more. (*See* ECF No. 22, Declaration of Anthony Cali, PgID 421.) Under the facts currently available to the Court, Liberty is very likely to succeed on the merits of its breach of contract claim against the Magnottes.

The second factor in the preliminary injunction analysis also favors Liberty—it is suffering an ongoing irreparable injury and will continue to do so in the absence of injunctive relief. For this factor, the harm must be "actual and

imminent," not speculative or unsubstantiated. *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). As discussed earlier, the Magnottes' failure to fulfill their post-termination obligations and their violation of the non-compete and non-solicitation clauses are causing ongoing competitive injury to Liberty. The competitive injury, especially the loss of customer goodwill, is irreparable because losses of that nature are difficult quantify and therefore not fully compensable with money damages. *Cf. Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute."). Liberty's injury is also likely to worsen in the absence of immediate injunctive relief. The two-year terms of Liberty's non-compete and non-solicitation clauses will expire on January 16, 2020. At that time, the Magnottes' will be free to openly compete and solicit former Liberty customers. It would be a fundamental injustice to allow the Magnottes to retain Liberty's confidential information, including customer lists and contact information, in order to use that information to compete with Liberty.

The final two factors—the harm to others and the public interest—can be considered together. Both favor granting a preliminary injunction. Generally, the harm-to-others prong is evaluated "in terms of the balance of the hardship between the parties." *Superior Consulting Co., Inc. v. Walling*, 851 F. Supp. 839, 848 (E.D. Mich. 1994). Here, an injunction would force the Magnottes to cede an improperly

gained competitive advantage. It would also require them to honor the last few days of the non-compete and non-solicitation clauses in their Franchise Agreements. In short, it would require them to honor their freely entered contractual commitments. *Cf. id.* ("[T]he injunction sought by [Plaintiff] only prevented [Defendant] from violating his freely entered contractual obligations."). This is not a significant hardship. Additionally, enforcing these contractual commitments vindicates the public interest. *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) ("Enforcement of contractual duties is in the public interest.").

All four factors weigh in favor of granting a preliminary injunction. The Magnottes have waived the bond requirement of Federal Rule of Civil Procedure 65(c), so Liberty is not required to give any amount of security to the Court. (ECF Nos. 22-2, 22-3, & 22-4, Exhibits A, B, & C, PgID 443, 474, 501.)

## V.    CONCLUSION

For those reasons, the Court grants, in part, Plaintiff Liberty's Motion for Temporary Restraining Order and Preliminary Injunctive Relief, (ECF No. 22), and orders that:

    1) Defendants Paul and Claudia Magnotte are enjoined from using any telephone number of any former Liberty franchise;

12

2) Defendants Paul and Claudia Magnotte are required to transfer the telephone numbers for their former Liberty franchises to Liberty;

3) Defendant Paul Magnotte is enjoined from continuing to hold himself out as a Liberty franchisee;

4) Defendants Paul and Claudia Magnotte are required to return to Liberty, at their expense, all printed materials provided by Liberty to Defendants, including, without limitation, all manuals, customer lists, advertising material, stationery and printed forms and all other matters relating to the operation of the franchises and/or bearing Liberty's Marks;

5) Defendants Paul and Claudia Magnotte are required to deliver to Liberty, at their expense, any original and all copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers who patronized the Liberty franchises, and any original and all copies, including electronic copies and media, containing customer tax returns, files, and records;

6) Defendants Paul and Claudia Magnotte are enjoined from continuing to operate a tax preparation business and soliciting former Liberty customers for that business in violation of the covenants not to

compete or solicit contained within the Franchise Agreements until those covenants expire on January 16, 2020; and

7) Defendants Paul and Claudia Magnotte are enjoined from using any confidential information obtained from Liberty's manual or system in any future tax preparation business they might operate.

IT IS SO ORDERED.


Dated:  January 10, 2020                           s/Paul D. Borman
                                                   Paul D. Borman
                                                   United States District Judge